IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LINDA KEY ELSEN,

                Plaintiff,

    v.                                                OPINION and ORDER

ANDREW SAUL,                                         19-cv-259-jdp
Commissioner, Social Security Administration,

                Defendant.

---

      Plaintiff Linda Key Elsen seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of Social Security, denying her application for disability benefits. The administrative law judge (ALJ) found that Elsen had several severe impairments but determined that she retained the residual functional capacity (RFC) to perform light work with several additional movement restrictions. The ALJ concluded that Elsen could meet the demands of her past work as a teacher aide, so the ALJ found her not disabled.

      On appeal, Elsen contends that the ALJ erred by relying on outdated medical opinions from state agency consultants and by attempting to interpret later medical findings herself. Elsen notes that if the ALJ had deemed her capable of sedentary work rather than light work, the medical vocational guidelines would have directed a finding that she was disabled. But Elsen fails to point to evidence that would support such a limitation in the period between the agency consultant opinions and Elsen's date last insured. Although Elsen underwent a total hip replacement in July 2016, the record shows that the surgery was effective and that Elsen recovered quickly. The ALJ did not err by relying on medical records documenting this improvement, or by failing to solicit updated agency consultant opinions. So the court will affirm the commissioner's decision.

BACKGROUND

The ALJ determined that between September 1, 2014 (Elsen's alleged disability onset date) and June 30, 2017 (her date last insured), Elsen suffered from numerous severe impairments, including degenerative disc disease of the lumbar spine; osteoporosis; degenerative joint disease of the left hip; left trochanteric bursitis; mild degenerative joint disease of the right hip; and degenerative joint disease of both knees. R. 30.[1] In light of these impairments, the ALJ found in her RFC assessment that Elsen could perform light work, with the additional restrictions that she could only occasionally climb, stoop, kneel, crouch, and crawl; and only frequently reach overhead with her left arm. R. 32. Relying on the testimony of a vocational expert, the ALJ found that Elsen could perform her past relevant work as a teacher aide. R. 36–37.

**A. Agency consultant opinions**

The ALJ gave "significant weight" to the opinions of two state agency medical consultants, Drs. Mina Khorshidi and Ronald Shaw. R. 36. At the initial level, Khorshidi opined that Elsen was capable of light exertional work with only frequent stooping. R. 111–12. She based this assessment on medical records received from Elsen's health care providers, which indicated that despite complaints of significant pain, Elsen had reported that "she was doing much better and had ceased her pain meds on her own accord." R 111. At the time that Khorshidi issued this opinion on August 12, 2015, the medical records she reviewed were current as of that summer. *See* R. 109 (indicating that Elsen's medical records were received in June and July of 2015).

---

[1] Record cites are to the administrative transcript, located at Dkt. 8.

At the reconsideration level, Shaw found the same functional limitations that Khorshidi had. R. 122. He based his assessment on the same records that Khorshidi reviewed, plus some additional physical therapy records received in October and November of 2015. R. 117–18. He issued his opinion on December 8, 2015.

**B. Subsequent medical developments**

Elsen does not contend that Khorshidi and Shaw's opinions failed to capture her limitations at the time they issued them. Instead, Elsen says that in the nearly 30 months that passed between the agency consultant opinions and the ALJ's decision on April 27, 2018, she experienced several medical events that further limited her functional capacity. She points specifically to developments in the condition of her right foot, left shoulder, and left hip. She asserts that "[a]ny of these three conditions could have reduced [her] ability to stand or lift such that Elsen would be no longer able to perform light work," which, given Elsen's age, would have rendered her disabled under the medical vocational guidelines.[2] Dkt. 10, at 10 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14).

Regarding her foot, x-rays taken in October 2015 revealed a metatarsal deformity and hammertoe deformity, and Elsen's provider discussed possible surgical interventions to address the problem.[3] R. 364. The ALJ noted these deformities and mentioned that Elsen's doctor

---

[2] In her brief-in-chief, Elsen's only developed argument is that developments in "these three conditions" (i.e., her right foot, left shoulder, and left hip) could have rendered her unable to perform light work. Dkt. 10, at 13. But she goes on to cite medical records related to other body parts. *See id.* at 13–15 (discussing Elsen's left knee, low back, and right hand). Then in her reply brief, she spends a page discussing medical records related to her low back. *See* Dkt. 12, at 8. Elsen didn't develop an argument about her left knee, low back, or right hand in her opening brief, so the court will not consider those conditions. *See Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018) (failure to develop argument in brief results in waiver).

[3] Although this record predates Shaw's opinion, it was not among the documents he reviewed,

scheduled the surgery for January 29, 2016. R. 34 (citing R. 366). The parties don't say whether this surgery ever happened, and Elsen cites no additional records related to her foot problems.

Regarding her shoulder, x-rays taken in May 2017 revealed left shoulder impingement, for which Elsen received two injections. R. 1133 and R. 1158. The ALJ made note of this. R. 35. The ALJ also noted that Elsen reported to her doctor in June 2017 that the injection, taping, and chiropractic care "had been helping her shoulder pain, and that overall her shoulder pain was fairly controlled." *Id.* In February 2018 (almost eight months after Elsen's date last insured), Elsen's doctor discussed operative and nonoperative treatment possibilities for her shoulder. R. 1250. Elsen indicated that she wanted a total shoulder arthroplasty, but that surgery had not yet been scheduled as of July 25, 2019, when she filed her brief in this case. Dkt. 10, at 15.

The most significant medical development Elsen experienced in the period between the agency consultant opinions and the ALJ decision concerned her hip. An x-ray taken on March 11, 2016 showed "severe narrowing of the left hip joint with spurring, reactive sclerosis, and subchondral cysts on either side" that had "worsened in appearance since the last exam." R. 433. Her doctor characterized it as "severe osteoarthritis. She is bone on bone." R. 406. He concluded that her "severely arthritic left hip" was "inhibiting her from many day-to-day activities," and that a total hip arthroplasty was reasonable under the circumstances. R. 406. So on July 11, 2016, Elsen underwent a total hip replacement. R. 725–26. The ALJ recounted all of this in her opinion, and noted that two weeks post-surgery, Elsen reported that she "was doing well, was controlling her pain with medication, was able to ambulate with the assistance

---

which were listed in his opinion. *See* R. 117–119.

of her walker, and was doing well with her exercises." R. 34–35 (citing R. 425–26). The ALJ further noted that six weeks post-surgery, Elsen had a normal gait and reported to her doctor that "she was doing extremely well" and "was very pleased with her progress." R. 35 (citing R. 1124). Elsen cites no additional records related to her hip problem.

ANALYSIS

The issue in this case is whether subsequent developments in Elsen's medical conditions required analysis by medical experts. This court must uphold the commissioner's decision to deny benefits unless the ALJ applied the wrong legal standard or her analysis was unsupported by substantial evidence. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). Here, the relevant question is whether "evidence containing new, significant medical diagnoses" that "reasonably could have changed the reviewing physician's opinion" emerged after the agency consultants provided their assessments. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). If there are such diagnoses, the ALJ is required to obtain an updated medical assessment, and her failure to do so would render the decision unsupported by substantial evidence. *Id.*

Elsen contends that she experienced significant developments in her foot, shoulder, and hip conditions that the ALJ was not qualified to assess without the benefit of an expert opinion. This contention raises two issues: first, whether the ALJ was qualified to assess the evidence in question on her own; and second, whether the medical developments reasonably could have changed the reviewing physicians' opinions such that an updated opinion was necessary.

As for the first issue, the ALJ's opinion makes clear that the RFC assessment was based on Elsen's contemporaneous, self-reported improvements, not on any independent evaluation of Elsen's x-rays or other complex medical findings. It was not beyond the competence of the

ALJ to consider Elsen's own statements to her treating providers that injections, taping, and chiropractic care had been effective in controlling her shoulder pain, or that the hip replacement surgery had alleviated her hip problems. The ALJ was required to consider the effectiveness of treatment in relieving Elsen's pain. *See* 20 C.F.R. § 404.1529(c)(3). That the ALJ also quoted radiologists' descriptions of Elsen's x-rays in the opinion does not mean that the ALJ interpreted those x-rays herself or relied on them as an independent, unsupported basis for adjusting Elsen's RFC. *See Olsen v. Colvin*, 551 F. App'x 868, 874–75 (7th Cir. 2014) (collecting cases illustrating that an ALJ plays doctor by ignoring relevant evidence and substituting her own judgment for those of medical experts, not by simply discussing the medical evidence in the record).

As for the second issue, the ALJ did not need to obtain updated medical opinions merely because Elsen had medical treatment after the agency consultants gave their opinions. The burden is on Elsen to present medical evidence suggesting that a medical expert reviewing her updated medical records would reach different conclusions than Khorshidi and Shaw. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). She has not done so here.

Elsen cites evidence that she was experiencing pain in her right foot in October 2015 and that a doctor discussed surgical options with her. But she doesn't point to any evidence that her foot pain persisted long enough to be considered disabling, *see* 42 U.S.C. § 423(d)(1)(A) (inability to work must persist for at least 12 months to qualify as a disability), or that foot pain inhibited her ability to perform light work at any time.

Elsen cites evidence that she experienced shoulder pain in May and June of 2017, but those same medical records indicate that the treatment Elsen received proved effective in controlling that pain. Elsen relies on evidence from February 2018—well after her June 30,

6

2017 date last insured—that shoulder x-rays showed "moderate osteoarthritic changes" and that Elsen wished to proceed with a shoulder replacement. *See* Dkt. 10, at 14–15 (citing R. 1249–51). But evidence that a condition worsened after a claimant's date last insured is not itself a basis for granting benefits during the period of coverage. *See Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011) (affirming ALJ's decision despite worsening symptoms after date last insured where records prior to date last insured showed claimant was asymptomatic). Evidence from after the date last insured is "relevant only to the degree that [it sheds] light on [the claimant's] impairments and disabilities from the relevant insured period." *Million v. Astrue*, 260 F. App'x 918, 921–22 (7th Cir. 2008). Elsen hasn't cited evidence from which an ALJ could infer that her shoulder condition had become disabling before June 30, 2017.

Elsen cites evidence that her hip condition had worsened as of March 2016, prompting the total hip replacement on July 11, 2016. A March 11, 2016 medical record indicates that Elsen's hip had "worsened in appearance since the last exam," R. 433, and was "inhibiting her from many day-to-day activities." R. 406. This record suggests that Elsen was more limited in March 2016 than she had been when the agency consultants evaluated her in 2015. If there were evidence that this worsened condition had persisted, the ALJ would have needed to obtain an updated medical opinion to address it. But the record shows that Elsen's hip condition was repaired with surgery: by August 18, 2016, she reported that she was "doing extremely well" and rated her pain "as 1/10 at the worst." R. 1124. There is no indication that Elsen sought benefits for a closed period of disability within her coverage period. So a medical expert providing an updated medical opinion after Elsen's successful hip surgery would have reached conclusions similar to those reached by Khorshidi and Shaw.

7

Elsen hasn't shown that any of the medical developments she experienced reasonably could have changed the opinion of a reviewing physician, so the ALJ did not err by failing to obtain updated medical opinions addressing those developments.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered December 13, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge